IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 5, 2023 Session

**ALANNA LEE KUMMER v. JOHNNY KUMMER, III**

**Appeal from the Circuit Court for Davidson County**
**No. 22D-329 Phillip R. Robinson, Judge**

———————————————————

**No. M2023-00033-COA-R3-CV**

———————————————————

A husband never answered his wife's complaint for divorce, and the trial court entered a default against him. After an evidentiary hearing, the trial court granted the wife a divorce and divided the marital estate. Within thirty days of entry of the final decree, the husband moved for relief from the judgment. On appeal, the husband faults the court for denying his motion. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which ANDY D. BENNETT and JEFFREY USMAN, JJ., joined.

Brandi L. Jones, Springfield, Tennessee, for the appellant, Johnny Kummer, III.

Wende J. Rutherford, Nashville, Tennessee, for the appellee, Alanna Kummer.

**OPINION**

**I.**

On March 4, 2022, Alanna Kummer ("Wife") filed for a divorce from her husband of twenty years, Johnny Kummer, III ("Husband"). Wife alleged multiple grounds in her complaint, including irreconcilable differences and Husband's inappropriate marital conduct. As relief, Wife requested an equitable division of the marital estate. The couple had no minor children.

At the time of the divorce filing, Husband was serving time in the Hardeman County Correctional Facility. The return of service showed that Husband was personally served

with a copy of the divorce complaint at the correctional facility on March 15.[1] Husband did not file a responsive pleading.

In May, Wife moved for a default judgment. After Husband failed to respond, the court granted the default judgment and set the case for a final evidentiary hearing. In its final decree entered on August 15, the court granted Wife an absolute divorce and equitably divided the marital estate. Almost a month later, the court issued an amended decree to correct a minor clerical error. The certificates of service on these filings indicated that true and correct copies were mailed to Husband at the address of the correctional facility.

On September 13, Husband filed a motion to set aside the final decree. *See* TENN. R. CIV. P. 60.02. Challenging the proof of service, he maintained that he "only received notice of [the] default divorce" after entry of the final decree. *See id.* 4.01(1) (providing that the return of summons "shall be proof of the time and manner of service"). He asserted that process servers "personally delivered" paperwork to be served on the inmates at the correctional facility to "the lobby of the facility only." Sometime later, a correctional worker "actually delivered" the paperwork. Because the date on the return was difficult to read, Husband maintained that he may not have been personally served before he was released from the correctional facility on March 16. He also complained that Wife sent copies of the motion for default and subsequent rulings to the correctional facility after he was released.

Alternatively, Husband argued that the default should be set aside "to prevent an injustice." *See id.* 59.04. Since his release, Husband had resided in a halfway house in Jackson, Tennessee. He claimed that he suffered from "serious mental and physical incapacitations." He had "literally lost everything" in the divorce even though he had a meritorious claim to a portion of the marital estate.

Husband supported his motion with an affidavit from his aunt and a copy of a Durable Financial Power of Attorney dated August 5, 2022. As his attorney-in-fact, Husband's aunt was authorized to handle his financial and legal affairs. She claimed she first learned of the pending divorce when Husband's former attorney notified her that a final decree had been entered. Based on the aunt's "investigation," she did "not believe that [Husband] was actually served" before his release.

The court held a hearing on Husband's motion. Husband's counsel described the correctional facility's "general procedure for service of process on inmates." No one from the correctional facility appeared at the hearing. Husband testified by telephone from the halfway house where he had resided since his March 16 release from the correctional facility. He conceded that he "was aware that [Wife] filed for a divorce." But he "did not

---

[1] Husband contends that the date of service on the return could be either March 15 or 16.

recall how he heard it." Nor could he recall receiving any paperwork before his release.

After considering the statements of counsel and Husband's testimony, the court declined to set aside the final decree. In the court's view, Husband "offered no testimony . . . wherein the Court could rule in favor of setting the parties' Final Decree aside."

## II.

### A.

Husband contends that the court erred in denying his motion to set aside the default.[2] Husband relied on two procedural rules in his motion—Rule 60.02 and Rule 59.04. Because he sought relief within thirty days of the entry of the final decree, the appropriate basis for seeking relief was Rule 59.04. *Discover Bank v. Morgan*, 363 S.W.3d 479, 488-89 (Tenn. 2012). But whether the analysis is under Rule 59.04 or Rule 60.02, we apply the abuse of discretion standard of review. *Id.* at 487. We will not reverse the court's decision unless it "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that cause[d] an injustice to the complaining party." *Id.* (quoting *State v. Jordan*, 325 S.W.3d 1, 39 (Tenn. 2010)). This is not an opportunity for the appellate court to substitute its judgment for that of the trial court. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). The "trial court's ruling 'will be upheld as long as reasonable minds can disagree as to [the] propriety of the decision made.'" *Id.* (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000)).

As Husband reminds us, trial courts should "grant relief from default judgments liberally because of the strong preference for deciding cases on their merits." *Discover Bank*, 363 S.W.3d at 491 n.20; *Tenn. Dep't of Hum. Servs. v. Barbee*, 689 S.W.2d 863, 867 (Tenn. 1985). Thus, if there is any reasonable doubt as to whether the judgment should be set aside, the motion should be granted. *Nelson v. Simpson*, 826 S.W.2d 483, 485-86 (Tenn. Ct. App. 1991). With this standard in mind, Husband insists that the court failed to properly assess the evidence. In his view, the proof presented "a case of mistake, inadvertence, or excusable neglect, rather than one of a willful failure to appear." *See Campbell v. Archer*, 555 S.W.2d 110, 113 (Tenn. 1977).

---

[2] Husband also complains that the court ignored his alternate argument that the final decree should be amended to "prevent an injustice." A Rule 59.04 motion may be granted "when, for [unique] reasons, a judgment should be amended to correct a clear error of law or to prevent injustice." *Bradley v. McLeod*, 984 S.W.2d 929, 933 (Tenn. Ct. App. 1998) *overruled on other grounds by Harris v. Chern*, 33 S.W.3d 741, 745 (Tenn. 2000). The trial court's finding that Husband offered no testimony wherein the court could rule in his favor applied equally to Husband's alternative argument. We agree that Husband failed to demonstrate that he was entitled to relief on this basis.

When the moving party seeks to set aside a final judgment based on excusable neglect, willfulness is the threshold inquiry. *Discover Bank*, 363 S.W.3d at 493-494. "If the court finds that the defaulting party has acted willfully, the judgment cannot be set aside on 'excusable neglect' grounds, and the court need not consider the other factors." *Id.* at 494. Husband insists that his failure to respond was due to a lack of notice, not willfulness. Lack of notice may constitute excusable neglect. *Henry v. Goins*, 104 S.W.3d 475, 480 (Tenn. 2003); *Pryor v. Rivergate Meadows Apartment Assocs. Ltd. P'ship*, 338 S.W.3d 882, 886 (Tenn. Ct. App. 2009). As the moving party, Husband was required to "offer proof of the basis upon which relief is sought." *Henry*, 104 S.W.3d at 482; *Tenn. State Bank v. Lay*, 609 S.W.2d 525, 527 (Tenn. Ct. App. 1980).

The return of service indicates that Husband was personally served with a copy of the divorce complaint on March 15. Tennessee courts presume that the time and manner of service reflected on the return is correct. *See* TENN. R. CIV. P. 4.01(1); *Royal Clothing Co. v. Holloway*, 347 S.W.2d 491, 492 (Tenn. 1961); *Watson v. Garza*, 316 S.W.3d 589, 594 (Tenn. Ct. App. 2008). Husband argued that the date on the return was "difficult to read" and could be March 16, his release date, rather than March 15.

Even so, Husband failed to rebut the presumption that he was personally served. The return is "the best evidence of the fact it states, and the oath of an interested party is not sufficient in law to overcome such return." *Royal Clothing Co.*, 347 S.W.2d at 492. To rebut the presumption, the testimony of the interested party must "be supported by other disinterested witnesses or corroborating circumstances." *Brake v. Kelly*, 226 S.W.2d 1008, 1011 (Tenn. 1950); *Cullum & Maxey Camping Ctr., Inc. v. Adams*, 640 S.W.2d 22, 25 (Tenn. Ct. App. 1982) (finding a "log book, credit card receipts, and truck repair bill, along with the testimony of Mrs. Bernard, . . . sufficient to corroborate the Adams' testimony that they were not present in Nashville on September 12, 1980, and therefore were not served with process"); *O.H. May Co. v. Gutman's, Inc.*, 2 Tenn. App. 43, 48 (1925) (requiring clear and convincing proof to overcome the presumption). Husband never denied that he was personally served. He just could not recall "being served with any paperwork before he left Hardeman County Correctional Facility." His reliance on counsel's description of the general procedure for serving inmates at the correctional facility to buttress his testimony is misplaced. "[A]rgument and statements of counsel during the course of a hearing are not evidence." *Oakes v. Oakes*, 235 S.W.3d 152, 158 (Tenn. Ct. App. 2007). Nor did the affidavit from Husband's aunt provide the necessary support.

Husband contends that the court ignored the fact that he "undoubtedly" did not receive notice of Wife's motion for default or any subsequent filings. According to the certificate of service on these documents, Husband was served with timely written notice of the default proceedings. *See* TENN. R. CIV. P. 55.01. A certificate of service "is prima facie evidence that the document was served in the manner described in the certificate and raises a rebuttable presumption that it was received by the person to whom it was sent." *Orr v. Orr*, No. 01-A-01-9012-CH-00464, 1991 WL 226916, at *4 (Tenn. Ct. App. Nov.

4

6, 1991).  The record reflects that these documents were sent to the correctional facility after Husband was released.  So Husband may have rebutted the presumption of receipt.  But he did not demonstrate excusable neglect.

A judgment "cannot be set aside on 'excusable neglect' grounds" if the moving party acted willfully.  *Discover Bank*, 363 S.W.3d at 494.  Willful conduct includes "deliberate choices" and "conduct that is flagrant and unexplained."  *Id.* at 493 (quoting *Barber & McMurry, Inc. v. Top-Flite Dev. Corp.*, 720 S.W.2d 469, 471 (Tenn. Ct. App. 1986), and *Hayes v. Hayes*, No. M2006-02356-COA-R3-CV, 2007 WL 2580026, at *2 (Tenn. Ct. App. Sept. 6, 2007)).  Here, the record supports the trial court's implicit finding that Husband acted willfully.  We must presume that Husband was personally served with process at the outset of this divorce action.  He never filed a responsive pleading, and his only explanation was an alleged lack of notice.  Wife served Husband with notice of her motion for default judgment by mailing a copy of the motion to Husband at his last known address.  *See* TENN. R. CIV. P. 5.02(1) (providing that service on a pro se party may be made by "mailing [the document] to such person's last known address").  Although Husband had already been released, there is no proof in this record that Wife was aware of that fact.  Husband had the responsibility of notifying the court of his new address.  *See Reynolds v. Battles*, 108 S.W.3d 249, 251 (Tenn. Ct. App. 2003).  Because he failed to do so, Husband was the "author of his own misfortune.'"  *Babcock v. Lambert Babcock*, No. E2020-00459-COA-R3-CV, 2021 WL 1664133, at *3 (Tenn. Ct. App. Apr. 28, 2021) (quoting *Napier v. Napier*, No. M2019-00978-COA-R3-CV, 2020 WL 4299404, at *7 (Tenn. Ct. App. July 27, 2020)).

Husband's failures to respond to the divorce complaint and to notify the court of his change of address are "flagrant and unexplained."  *Hayes*, 2007 WL 2580026, at *2.  Thus, he is not eligible for relief based on excusable neglect.  *See McBride v. Webb*, No. M2006-01631-COA-R3-CV, 2007 WL 2790681, at *3 (Tenn. Ct. App. Sept. 25, 2007) (concluding that the defendant's conduct in failing to respond to the complaint was willful whether or not she actually received the motion for default judgment).

B.

Husbands asks for an award of attorney's fees on appeal.  We have discretion to award reasonable attorney's fees to a prevailing party in a divorce action.  *See* Tenn. Code Ann. § 36-5-103(c) (2021); *Pless v. Pless*, 603 S.W.3d 753, 773 (Tenn. Ct. App. 2019).  Because Husband did not prevail, he is not entitled to an award of attorney's fees.

**III.**

We affirm the denial of Husband's motion for relief from judgment.  The case is remanded to the trial court for whatever further proceedings are necessary.

_____s/ W. Neal McBrayer_____
W. NEAL MCBRAYER, JUDGE